UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HAROLD CLAY and
YOLANDA CLAY,
    Plaintiffs,

                                Case No.

v.

EQUITYEXPERTS.ORG, LLC,
And
BRIDLECREEK HOMEOWNERS ASSOCIATION, INC.,
a Georgia non profit corporation,
    Defendants.
_____

## COMPLAINT AND JURY DEMAND

NOW COMES THE PLAINTIFFS, HAROLD CLAY AND YOLANDA CLAY, THROUGH COUNSEL, CREDIT REPAIR LAWYERS OF AMERICA, BY DANIEL BRENNAN, ESQ., and for their Complaint against the Defendant pleads as follows:

## JURISDICTION

1. This is an action for damages, brought against a debt collector for violating the Fair Debt Collection Practices Act at 15 U.S.C. § 1692 et seq.

## VENUE

1

2. The transactions and occurrences which give rise to this action occurred in the City of Acworth, Cobb County, Georgia.

3. Venue is proper in the Northern District of Georgia.

## PARTIES

4. Plaintiffs Harold and Yolanda Clay ("Plaintiffs"), are natural persons residing in the City of Acworth, Cobb County, Georgia.

5. Defendant EquityExperts.Org, LLC ("EE"), which is a Michigan company that conducts business in the State of Georgia.

6. Bridlecreek Homeowners Association ("Bridlecreek" or "HOA") is a Georgia nonprofit corporation that conducts business in the State of Georgia.

## GENERAL ALLEGATIONS

7. EE is debt collector, attempting to collect a consumer debt allegedly owed by Plaintiffs to Bridlecreek Homeowners Association in the approximate amount of $2,059.20 ("the alleged Debt").

8. Prior to its collection efforts, EE entered into a written contract with Bridlecreek to collect debts owed to the HOA from its members, pursuant to a unilaterally contrived fee schedule cooked up solely by EE.

9. EE, as more fully described below, induces HOAs such as Bridlecreek, to sign its fee agreement on the promise that it will cost them nothing to do so

and that the HOA can only gain money from entering into EE's boiler plate agreement to allow the latter to collect the HOA's debts from its residents.

10. On or about November 17, 2020, Defendant sent a letter to Plaintiffs attempting to collect the alleged Debt on behalf of the HOA.

11. The letter stated that Plaintiffs owed a current balance of $562.10. Although the letter states the "balance may consist of regular association assessments, special assessments, interest, fees, fines and cost", it fails to delineate the portion of the balance that consists of the underlying Debt and what portion of the balance is for other amounts. At the time this letter was sent, Plaintiffs only owed the HOA $292.10 in assessments.

12. On December 22, 2020, Defendant sent another letter to Plaintiffs attempting to collect the alleged Debt.  The letter stated that Plaintiffs owed a current balance of $912.10, advising that "an additional $350.00 collection cost has been charged to the association to be added to" Plaintiffs' balance.

13. On January 5, 2021 and February 24, 2021, Defendants sent additional letters to Plaintiffs attempting to collect the alleged Debt. Neither letter stated the then balance of the alleged debt but directed the Plaintiffs to contact EE within seven days to discuss their account. The February 24, 2021 letter stated that if the total balance was not paid or an agreement to a payment plan was not reached within seven days of the date of the letter,

collection costs in the amount $650.00 "will be charged to the association to be added to" Plaintiffs' account.

14. On March 22, 2021, Plaintiff received a Statement of Account from EE that listed the following excessive fees in the amount of $1,570.00 as part of a total balance owing of $2,059.20 (Ex A)[1]:

    a. FDCPA Compliance Assurance / Dun Letter in the amount of $270.00;

    b. Escalated Debtor Outreach (EDO 1) in the amount of $350.00;

    c. Escalated Debtor Outreach (EDO 2) in the amount of $100.00;

    d. Escalated Debtor Outreach (EDO 3) in the amount of $100.00;

    e. Escalated Debtor Outreach (EDO 4) in the amount of $100.00;

    f. Post Outreach Line Enforcement (POL1) in the amount of $650.00. Per Outbound Contact.

15. To recap, the Plaintiffs owed their HOA the sum of $292.10 as of November 1, 2020, plus an additional $187.10, totaling $497.20.  While in the hands of EE, this balanced ballooned enormously to $2,059.20 in a matter of 4 months.  This is outrageous and unconscionable.

---

[1] In the interim, the Plaintiffs accrued another $187.10 annual fee from their HOA.

## ABOUT EQUITYEXPERTS.ORG

16. EE's business model is to act as a collection agent for various HOAs. Because the debts collected by EE are incurred primarily by consumers for personal, family and/or household use, EE is governed by the Fair Debt Collection Practices Act.

17. Moreover, EE's business model is such that it charges no costs or fees to the HOAs on behalf of which it attempts to collect debts. Defendant merely provides a schedule of fees to a HOA board of directors and informs it that EE will merely seek these costs from the delinquent homeowner only. Moreover, over the past several years and to this day, EE has advertised on its website that it does not charge fees and costs to HOAs, thereby incentivizing HOAs to sign these contracts with EE.

18. EE, pursuant to its written contract with the HOA, unilaterally assesses a schedule of fees that have no basis in fact. These charges are highly inflated and designed to line EE's pockets rather than reflect a cost to the consumer or HOA for the cost of collection plus a reasonable profit. EE assesses these charges to consumers quickly so that a small debt that may be owed to an HOA, quickly grows to unconscionable amounts in a very short time period. These fees are unreasonable and unconscionable and as assessed in

unconscionably quickly.  These costs and their rate of assessment violate the Fair Debt Collection Practices Act.

19. In this case, EE received an initial balance from the HOA to collect the amount of $292.10, on or about November 1, 2020.  But over the course of sending a few dunning letters, EE has tacked on its own fees and costs and has grown this balance to $2,059.10, almost ten times the amount of the original balance.  EE attempted to collect money due to the HOA plus a raft of unconscionably high charges, for example:

   a. FDCPA Compliance Assurance / Dun Letter in the amount of $270.00;

   b. Escalated Debtor Outreach (EDO 1) in the amount of $350.00;

   c. Escalated Debtor Outreach (EDO 2) in the amount of $100.00;

   d. Escalated Debtor Outreach (EDO 3) in the amount of $100.00;

   e. Escalated Debtor Outreach (EDO 4) in the amount of $100.00;

   f. Post Outreach Line Enforcement (POL1) in the amount of $650.00. Per Outbound Contact.

20. Plaintiff never agreed to pay any of these bogus charges.  Furthermore, these charges were never authorized by law.  Plaintiff never had any duty to pay any of these Bogus Charges.

## The Ultra Vires Agreement between EE and Bridlecreek is void.

21. A contract of a corporation which is "ultra vires," or outside the object of its creation, is beyond the powers conferred upon it by the legislature. An ultra vires contract is not only voidable, but wholly void, and is of no legal effect. The objection to the contract is not merely that the corporation should not have made it, but that it could not make it. Such a contract cannot be ratified by either party, because it could not have been authorized by either party. No performance on either side can give the unlawful contract any validity or be the foundation of any right of action upon it. *Jacksonville, M., P. Ry. & Nav. Co. v. Hooper*, 160 U.S. 514, 524, 16 S. Ct. 379, 383, 40 L. Ed. 515 (1896).

22. Bridlecreek is governed by a board of directors and owes a fiduciary duty to the HOA as well as its members. It is also governed by master deed and/or Covenants, Conditions and Restrictions ("C C & Rs"). The C C & Rs act much like a contract between a property owner in an HOA and the HOA itself. The C C & Rs allow the HOA to collect dues for the maintenance of the property. They also allow the HOA to collect the costs of collection upon residents, such as the Plaintiff, when a resident becomes delinquent in paying their HOA dues.

23. However, the C C & Rs do not allow a homeowner's association such as co-defendant Bridlecreek HOA to collect whatever amounts they want from residence, otherwise the term "cost of collection" would be meaningless in the C C & Rs.  Moreover, interpreting the C C & Rs as allowing the HOA to collect such inflated charges that have no basis in fact or relationship with actual costs of collection would render the C C & Rs unconscionable and unenforceable.

24. By entering a contract with EE that allows EE to soak whatever fees and costs it wants from the HOA property owners under the guise of "collection costs" is beyond the grant of its authority by the master deed and/or the C C & Rs, and thus is void.  Hence, EE had no authority to charge and collect its outrageous fees and costs from the Plaintiffs.

## EE's Fees and costs are unconscionable

25. The GA Supreme Court has noted that the basic test for determining unconscionability is "whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. *NEC Technologies, Inc. v. Nelson*, 267 Ga. 390, 391 (Ga. 1996).

26. In this case, the HOA was induced into sign an agreement with HOA because it had no downside but only upside potential to the HOA. However, that very agreement had a huge downside to the residents of the HOA, namely that if their debts were turned over to EE, they would be slammed with the most unconscionably high fees for debt collection that the industry has ever seen. These purported fees are not costs of collection, but rather the price of expensive cars, homes and jewelry for the owners of EE. There is simply no basis in fact or law for the fees charged by EE to the Plaintiffs.

27. For these reasons, the inflated fees that EE charges the residents of Bridlecreek HOA which have no relationship to anything other than the greed of the parties involved, has rendered the very agreement between EE and Bridlecreek, unconscionable and thus, unenforceable.

## COUNT I
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (EE)

28. Plaintiffs reincorporates the preceding allegations by reference.

29. At all relevant times, Defendant, in the ordinary course of its business, regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

30. Plaintiffs are "consumers" for purposes of the FDCPA and the account at issue in this case is a consumer debt.

31. Defendant is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

32. Defendant's foregoing acts in attempting to collect this alleged debt violated the following provisions of the FDCPA:

   a. 15 U.S.C. § 1692d by engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Defendant violated this section of the FDCPA by charging excessive fees, and overcharging for services allegedly performed by Defendant;

   b. 15 U.S.C. § 1692e(2)(a) by misrepresenting the character, amount or legal status of any debt. Defendant misrepresented the amount of the alleged Debt, charged excessive fees, and overcharged for services allegedly performed by Defendant;

   c. 15 U.S.C. § 1692e(5) by threatening to take action that cannot legally be taken or is not intended to be taken.  Defendant violated this provision when it threatened to charge additional fees if Plaintiffs did not pay the inflated amount of the alleged Debt, though Plaintiffs already had an agreement with the Association to satisfy the judgment and were making payments pursuant to that Agreement.

    d. 15 U.S.C. § 1692e(10) by using false representations and deceptive means to collect a debt. Defendant violated this provision by misrepresenting the amount of the alleged Debt, charging excessive fees, and overcharging for services allegedly performed by Defendant; and

    e. 15 U.S.C. § 1692f(1) by collecting any amount not permitted by law. Defendant violated this provision by misrepresenting the amount of the alleged Debt, charging excessive fees for the alleged Debt, and overcharging for services allegedly performed by Defendant.

33. Plaintiffs have suffered economic, emotional, general, and statutory damages as a result of these violations of the FDCPA.

34. Defendant's false representations and deceptive means to collect a debt resulted in Plaintiff's suffering emotion distress, anxiety, humiliation, embarrassment worry and nervousness.

35. Defendant's attempts to collect unauthorized fees and threats of additional charges resulted in Plaintiff's suffering anxiety, worry, and stress regarding Defendant's unauthorized collection efforts.

## COUNT II –
## BREACH OF FIDUCIARY DUTY (Bridlecreek)

36. Plaintiff realleges the above paragraphs.

37. Defendant Bridlecreek, at all times relevant to this complaint, owed a fiduciary duty to Plaintiff, to act in good faith and to act in the best interests of both the HOA and Plaintiff.

38. Defendant HOA's conduct is circumscribed by the Master Deed and/or the C C & Rs which authorize the HOA to collect dues and to collect costs related to collecting dues.

39. Defendant HOA breached this fiduciary duty by entering into a contract with co Defendant EE that purported to allow both EE and the HOA to charge fees to the Plaintiff that are well beyond the costs of collection as referenced in the C C & Rs.  The purported contract between the parties was ultra vires to the authority granted to the HOA by the master deed and/or the C C and Rs.

40. The purported contract between EE and the HOA upon which EE relied on in sending dunning letters to the Plaintiffs, was void.

41. Defendant HOA also breached its fiduciary duty to the Plaintiffs by failing to establish any factual basis for the fees listed in the purported contract between the HOA and EE and simply allowing EE to unilaterally dictate and extract money from the Plaintiffs that are unrelated to costs.

42. As a direct and proximate cause of Bridlecreek's breach of its fiduciary duties to the Plaintiffs, the Plaintiffs have suffered mental, emotional and financial damages.

## DEMAND FOR JUDGMENT RELIEF

Accordingly, Plaintiffs request that the Court grant them the following relief against Defendants:

a. Actual damages;

b. Statutory damages; and

c. Statutory costs and attorneys' fees.

## JURY DEMAND

Plaintiffs hereby demand a trial by Jury.

Respectfully submitted.

DATED: June 22, 2021

> By: /s/ Daniel Brennan
> Daniel Brennan
> Bar Number 271142
> Credit Repair Lawyers of America
> 22142 West Nine Mile Road
> Southfield, MI 48033
> Telephone: (248) 353-2882
> Facsimile: (248) 353-4840

            E-Mail: daniel@crlam.com
            *Attorney for Plaintiff*